UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MARK WEBB,                              )
                                       )
              Plaintiff,                )
                                       )
       v.                              )     No. 1:24-cv-00424-JPH-MG
                                       )
PILOT TRAVEL CENTERS LLC,              )
                                       )
              Defendant.               )

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mark Webb fell on ice in Pilot Travel Centers LLC's parking lot while he was walking to his parked semitruck.  He filed this action alleging that Pilot was negligent in failing to remedy the icy conditions.  Pilot has moved for summary judgment.  For the reasons below, that motion is **DENIED**.  Dkt. [33].

**I.**
**Facts and Background**

Because Pilot has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

On the morning of January 27, 2023, Mr. Webb drove to Pilot's Flying J travel center in Lebanon, Indiana, where his employer regularly parked semitrucks overnight.  Dkt. 34-1 at 6–7, 13 (Webb Dep. 27:13–23, 28:6–30:2, 55:9–14).  Mr. Webb arrived around 6:15 a.m. and pulled his personal truck up next to his semitruck, intending to start and warm up the semitruck.  *Id.*

1

(Webb Dep. 28:6–24). The area was well-lit, and Mr. Webb noticed that the parking lot was icy and "looked dangerous." *Id.* at 9, 12 (Webb. Dep. 41:4–19; 50:16–22); *id.* (Webb Dep. 40:9–16, 49:7–23) (describing the ice as the "worst [he had] seen [there]," "probably a quarter inch" thick). That day, temperatures ranged from 14 to 23 degrees between midnight and 7:00 a.m. Dkt. 38-1 at 9.

Mr. Webb had been trained how to safely navigate winter hazards. Dkt. 34-1 at 5, 12–13 (Webb Dep. 24:23–25:8, 52:13–54:20). Because Mr. Webb had "walked on ice before" and "had [] slip-resistant boots on," he believed he could "take . . . short steps" to his semitruck. *Id.* at 9 (Webb. Dep. 41:8–19). After walking about six feet, he slipped and fell on his "left shoulder and hit [his] head." *Id.* at 6 (Webb Dep. 28:13–19). He then got up, got into his semitruck, and called his supervisor to tell him what happened. *Id.* at 9 (Webb Dep. 39:17–25). A coworker arrived shortly thereafter to take Mr. Webb to the hospital. *Id.* at 14 (Webb Dep. 58:20–59:1). Neither Mr. Webb nor the coworker told Pilot about Mr. Webb's fall, or the parking lot's icy condition. *Id.* at 10–12, 14–15 (Webb Dep. 42:11–19, 49:24–50:8, 61:2–62:8).

Pilot is open twenty-four hours and operates three shifts (6 a.m.–2 p.m.; 2 p.m.–10 p.m.; and 10 p.m.–6 a.m.). Dkt. 38-5 at 2–3 (Abernathy Dep. 17:18–18:20). At the start of each shift, managers are supposed to perform walkthroughs, which include checking for and addressing exterior hazards like ice and snow. *Id.* at 3 (Abernathy Dep. 18:4–21:11). During the first two shifts, Pilot has a dedicated outside maintenance person who addresses snow and ice hazards with salt spreaders and shoveling. *Id.* at 4 (Abernathy Dep.

2

22:9–24:22); dkt. 38-6 at 4 (Canner Dep. 12:5–12).  Susan Canner, the shift manager on duty the day of Mr. Webb's fall, did not remember whether walkthroughs were done at the start of the shift that day, or whether they found ice.  *See* dkt. 38-6 at 7 (Canner Dep. 22:1–15).

In January 2024, Mr. Webb filed this case in Indiana state court, alleging that Pilot was negligent under Indiana law.  Dkt. 1-1 at 2.  Pilot removed the case to this Court, dkt. 1 at 1, and moved for summary judgment, dkt. 33.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor."  *Zerante*, 555 F.3d at 584.

Indiana substantive law governs this case.  *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).  Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court

3

would rule on the issues of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

Under Indiana law, a negligence claim requires the plaintiff to establish: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach. *Beta Steel v. Rust*, 830 N.E.2d 62, 69 (Ind. Ct. App. 2005).

Pilot does not dispute the first element—that it owed Mr. Webb "the highest duty of care . . . to exercise reasonable care for [his] protection while [he is] on the premises." *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66 (Ind. 2018) ((citing Restatement (Second) of Torts § 332 (1965)); dkt. 35 at 5–6. Under that reasonable-care standard:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Roumbos*, 95 N.E.3d at 66 (quoting Restatement § 343). Restatement § 343 is read with § 343A, which adds that a possessor of land "is generally not liable for injuries resulting from 'known or obvious' dangers." *Id.* (citing Restatement

§ 343A(1)).  Pilot argues that it's entitled to summary judgment on the element of breach under § 343A because the danger was known or obvious and, in the alternative, under § 343 because it did not know of the dangerous condition. Dkt. 35 at 5–7.

### A. Restatement § 343A: Known or Obvious Danger

The parties do not dispute that the danger from the ice was known or obvious.  Dkt. 35 at 6–7; dkt. 39 at 6–8; dkt. 34-1 at 9, 12 (Webb. Dep. 40:9–41:19; 49:7–50:22).  And a business "is generally not liable for injuries resulting from 'known or obvious' dangers" on the premises.  *Roumbos*, 95 N.E.3d at 66 (quoting Restatement § 343A(1)).  "But there is an exception if a reasonable landowner would anticipate the harm despite the invitee's knowledge of the danger's obviousness."  *Id.*  That exception applies when the landowner "has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk."  *Weaver v. Speedway, LLC*, 28 F.4th 816, 821–22 (7th Cir. 2022) (applying Indiana law and quoting Restatement § 343A cmt. f).[1]

Mr. Webb relies on that exception, arguing that Pilot should have anticipated the harm since it ran a 24-hour business and knew that "truck drivers regularly parked and walked in the area where the ice had formed, despite the conditions."  Dkt. 39 at 9.  Pilot contends that the exception does

---

[1] The exception also applies when the landowner "has reason to expect that the invitee's attention may be distracted," *Weaver*, 28 F.4th at 821, but Mr. Webb does not argue that applies here, *see* dkt. 39 at 8–10.

not apply here because it could reasonably expect that a customer would go into or call the store for assistance instead of walking on the ice.  Dkt. 40 at 6–7.

Mr. Webb has designated evidence that his employer regularly parked semitrucks in Pilot's lot overnight, dkt. 34-1 at 5–6 (Webb Dep. 27:20–23, 29:24–30:2), and that Pilot employees surveyed its lot for hazards three times a day under Pilot's policies.  Dkts. 38-6 at 4 (Canner Dep. 12:5–12); 38-5 at 3 (Abernathy Dep. 18:4–21:11).  That supports a reasonable inference that Pilot knew that truck drivers regularly parked and walked in the area to get to their semitrucks for work.  *See Zerante*, 555 F.3d at 584.

In that situation, under Indiana negligence law, there is a triable issue of fact about whether Pilot should have reasonably anticipated that a driver would choose to encounter the risk from the ice.  *See Countrymark Cooperative, Inc. v. Hammes*, 892 N.E.2d 683 (Ind. Ct. App. 2008).[2]  In *Countrymark*, a tanker-truck driver was loading gasoline at a terminal when the gas meter malfunctioned.  He was required to report any mechanical problems, so he ultimately walked to the terminal building in search of an employee.  *Id.* at 690–91.  On his way there, he slipped and fell on ice.  *Id.* at 691.  The Indiana Court of Appeals held that there was a triable question of fact about whether

---

[2] Pilot argues that Mr. Webb's cited cases are distinguishable because they were decided under Indiana's summary judgment standard, which requires the moving party to affirmatively "negate an opponent's claim," rather than simply point to the non-moving party's lack of evidence.  Dkt. 40 at 7; *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).  That difference does not affect this case because summary judgment turns on what a reasonable jury could find from the designated evidence, rather than an asserted lack of evidence.

the landowner should've anticipated the harm despite the ice's obviousness, since Countrymark failed to staff the area. *Id.* at 691–92; *accord Jakubiec v. Cities Serv. Co.*, 844 F.2d 470 (7th Cir. 1988) (applying Restatement § 343A via Illinois law) (reversing summary judgment when plaintiff fell on an icy platform while completing required job duties).

Similarly here, Mr. Webb crossed the ice to get to his semitruck for work. Dkt. 34-1 at 6–7, 13 (Webb Dep. 27:13–14, 28:6–29:1, 55:9–14). As explained above, a reasonable jury could find that Pilot knew that truck drivers regularly parked and walked in the area that was covered with ice. Dkt. 38-6 at 4 (Canner Dep. 12:5–12); dkt. 38-5 at 3 (Abernathy Dep. 18:4–21:11). Since Pilot did not address that ice, a reasonable jury could find that Pilot should have anticipated the harm. *See Countrymark*, 892 N.E.2d at 691–92 ("[G]iven Countrymark's failure to staff the gas racks, genuine issues exist as to whether Countrymark should have anticipated the harm despite [the invitee's] knowledge of the danger or the obviousness of the danger."); *accord Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 22–24 (Ind. Ct. App. 2015) (applying *Countrymark* and reversing summary judgment when the plaintiff slipped on snow walking from her car to the hotel she was staying at, because there was a triable issue of fact about whether the hotel should have anticipated the harm even if the hazard was obvious).

Pilot argues that *Countrymark* does not apply here because Mr. Webb "did not attempt any alternatives or seek any assistance from store personnel before deciding to cross the ice." Dkt. 40 at 10. But *Countrymark* does not say

7

that the driver was required to exhaust potentially safer alternatives—including the ones Pilot suggests here like calling the business or driving to the main building instead of walking. *See* 892 N.E.2d at 691–92; dkt. 40 at 6–7. While the court in *Countrymark* noted that the truck driver first attempted alternatives to walking across the ice, like yelling for assistance and sounding his truck's horn, 892 N.E.2d at 691–92, what ultimately matters is whether the possessor of land "should anticipate the harm"—"[t]here is no requirement under [§ 343A] that an invitee's conduct [in facing a known or obvious risk] be undertaken for compelling circumstances." *Smith v. Baxter*, 796 N.E.2d 242, 244–45 (Ind. 2003); *see also Rosehill Hotels*, 45 N.E.3d at 24 (reversing summary judgment without addressing whether the invitee should have called the hotel to request assistance before walking through the snow).

Pilot's reliance on *Lin* and *Smagala* do not alter this conclusion. In *Lin*, the plaintiff fell while exiting his hotel room's slow-draining bathtub. 2020 WL 6274839, at *1. This Court granted summary judgment in part because the hotel could "reasonably expect its guests to choose a safer alternative before taking the obvious risk of stepping out of standing water over the ledge of a slippery shower," such as "waiting to see if the water would drain." *Id.* at *5. And in *Smagala v. Embassy Suites Management, LLC*, the plaintiff fell while walking down dark stairs in her hotel suite to use the restroom. No. 1:17-cv-3648-JPH-DLP, 2020 WL 208804 at *1 (S.D. Ind. Jan. 14, 2020). This Court held that the hotel would not have anticipated the harm because there was also a restroom on the second floor of the suite. *Id.* The facts here are more

8

similar to the facts in *Countrymark*, where the court found a triable issue of fact because the landowner's failure to staff the gas racks resulted in the truck driver's decision to walk across ice to fulfill his job duties.  892 N.E.2d at 691–92.  The same result applies here because the designated evidence allows a reasonable jury to find that Pilot should've anticipated that Mr. Webb would cross the ice, despite its obviousness, in an area where Pilot knew that truck drivers regularly parked and walked to their semitrucks for work.  *See id.*

### B. Restatement § 343: Pilot's Knowledge of Dangerous Condition

Pilot alternatively argues that it's entitled to summary judgment because there is "no evidence demonstrating that Pilot knew or by the exercise of reasonable care should have discovered the icy section that Webb slipped on." Dkt. 35 at 7 n.1; *see* dkt. 40 at 12.  Mr. Webb responds that there had been significant precipitation and freezing temperatures, and that Pilot's "own policies and procedures required its shift managers and employees to monitor for and treat ice in the parking area where Mr. Webb fell."  Dkt. 39 at 12–13.

Under § 343, "before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012).  Constructive knowledge exists when a condition "has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury" if the invitor "had used ordinary care."  *Id.* This is "an issue of reasonableness" from "the landowner's perspective." *Roumbos*, 95 N.E.3d at 67.

Mr. Webb has designated evidence that Pilot's employees did a walkthrough at the beginning of each shift—including once during the "overnight" and again at 6:00 a.m., shortly before Mr. Webb's fall[3]—to check for external hazards, including ice, that could cause something "to happen to our guests."  Dkt. 38-5 at 3–4 (Abernathy Dep. 18:4–24:22).  That is enough for a reasonable jury to infer constructive knowledge by finding that Pilot should have discovered and addressed the ice before Mr. Webb's fall as an "exercise of reasonable care."  *See Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 752–53 (Ind. Ct. App. 2011) (reversing summary judgment because a reasonable jury could find constructive knowledge from evidence that the landlord was aware of a risk of ice but did not check again for ice in the evening after temperatures dropped).

This case therefore is not like *Austin v. Walgreen Company*.  885 F.3d 1085, 1088 (7th Cir. 2018).  There, the plaintiff slipped at the store entrance on "something wet" that may have been from snow tracked into the store.  *Id.* at 1088–89.  The Seventh Circuit affirmed summary judgment because, without designated evidence about how long the hazard had been there, there was no "evidence that Walgreen had a chance to respond."  *Id.*  Here, by contrast, Pilot's walkthroughs allow a reasonable jury to find that it had a chance to find

---

[3] Pilot notes in a footnote that its walkthroughs were supposed to happen "first thing" for each shift, they did not always happen immediately "depend[ing] on how busy we are."  Dkt. 38-6 at 4 (Canner Dep. 13:1–25); dkt. 38-5 at 3–4 (Abernathy Dep. 18:13–20).  While a delayed walkthough on the day of Mr. Webb's fall might affect actual knowledge, it does not undermine constructive knowledge from Pilot's walkthrough practices and schedule.  *See Schulz*, 963 N.E.2d at 1144.

the ice and respond, which is enough for constructive knowledge.  *See Bell*, 950

N.E.2d at 752–53.  This case is therefore more like *Williams v. Meijer Stores*,

which distinguished *Austin* and held that a reasonable jury could find

constructive knowledge of hazardous parking-lot conditions because a recent

snowfall had made roads and parking lots slick.  No. 1:18-cv-1453-WTL-DML,

2019 WL 954776 at *2 (S.D. Ind. Feb. 26, 2019).[4]

In sum, Pilot does not dispute the presence of the ice or that its

walkthroughs three times a day were an exercise of reasonable care to find and

address hazards like that ice.  Dkt. 38-5 at 3–4 (Abernathy Dep. 18:4–24:22).[5]

For that reason, there is a triable issue of fact about whether Pilot had

constructive knowledge of the ice.

## IV.
## Conclusion

Pilot's motion for summary judgment is **DENIED**.  Dkt. [33].  The

magistrate judge is asked to hold a status conference to discuss settlement and

trial readiness.

**SO ORDERED.**

---

[4] The Court therefore does not address the parties' arguments about Mr. Webb's designated evidence about weather reports from the days leading up to the fall.

[5] While Pilot speculates that the ice was from melting and re-freezing, making it unlikely it had been there long, it designates no supporting evidence and does not explain why its walkthroughs should not have found the ice even if it were from re-freezing.  Dkt. 40 at 13.  Regardless, at this stage all reasonable inferences must be drawn in Mr. Webb's favor.  *See Feliberty*, 98 F.3d at 276–77.

Date: 3/23/2026

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel